CASE 98—EQUITY—FEBRUARY 16, 1884.

# Kean v. Tilford, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Joint tenants, tenants in common, and coparceners are entitled to a division of their real estate, and whether it be one or the other, they have a vested estate, and with such an interest if the property be not susceptible of division without materially impairing its value, it may be sold by the judgment of the chancellor.

2. One tenant can not, by making a disposition of his interest to his children, or to a stranger with a clause prohibiting a sale, prevent his co-tenants from having a sale by the court if the property be indivisible.

3. Section 490, Civil Code, applies not only to cases of joint tenancy, but to tenancies in coparcenary and in common.

4. If the property is not susceptible of division, section 497 has no application.

5. The judgment ordering a foreclosure of the mortgage of one interest did not dispose of the questions made by the cross-petition of the joint owners, and could not prevent them from obtaining a sale of the entire property.

C. B. SEYMOUR FOR APPELLANT.

1. The chancellor had no inherent power to sell lands because of indivisibility.

2. The requirements of the statute have not been complied with.

3. No authority is given by the Code of Practice to sell real estate in a case like this.

Because the Code confers no new rights.

Section 491 does not authorize a sale unless it will subserve the interest of all parties.

The case is not within section 490 of the Code.

Nor does the power in Joshua F. Speed's will, until the same is exercised, affect the estate in any way.

By section 494, if a defendant, having a joint interest object, his share shall not be sold.

It was error to render a second judgment while the first was not executed.

The Code, chapter 14, title 10, only confers authority upon the court to be exercised in its discretion. When it is considered that the interest of one of the parties requires that no sale be made, the chancellor ought not to sell. (Pearson on Remainders, chap. 2, sec. 2; *Ib.*, chap. 1, sec. 9; Kent's Comm., 4, 207; Walker v. Smyser, 80 Ky., 620; Gen. Stats., chap. 63, art. 3, sec. 1, and art. 6, sec. 1; Stump v. Martin, 9 Bush, 285; Code Practice, secs. 490, 491, 492, subsecs. 1 and 4 and 494, subsec. 7; Gossom v. McFerran, 79 Ky., 236; Bell v. Clark, 2 Met., 575; Nutter v. Rupell, 3 *Ib.*, 165; Freeman on Co-tenancy, sec. 440; Liederkranz v. Beck, 8 Bush, 597; Bl. Comm., book 2, chap. 12; Lee v. Lee, MS. op. Superior Court, May, 1883.)

JAMES SPEED AND THOMAS & JOHN SPEED FOR APPELLEES.

The chancellor did not err in sustaining the demurrer to George Kean's answer and ordering a sale of the property.

Because all the parties interested were before the court. None who were *sui juris* objected to the sale.

All of the estates were vested and in possession, and the property incapable of division without materially impairing its value.

If there is any part of section 490, Civil Code, unconstitutional, it is only the language that in such a case requires the estate to be vested and in possession, and the right having been given by the statute, the Code only changed the mode of procedure.

The record shows that it is to the interest of George Kean that the property should be sold.

All joint owners under our statutes have a right to coerce partition, and a sale in such a case as this, is nothing more. No one has a right to object.

(Civil Code, sec. 490, sub-sec. 7, sec. 494; 2 Cruise's Dig., 270; 2 ch. Bl., 169; Walters v. Crutcher, 10 B. Mon., 10; Williamson v. Williamson, 18 *Ib.*, 868, 375; Fearne on Cont. Remainders, 240; Stump v. Martin, 9 Bush, 286; Gen. Stat., ch. 63, art. 3, sec. 6.)

.JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The Louisville Hotel and its appurtenancies were originally owned by M. Kean, Jas. W. Henning, and Joshua F. Speed. Kean owned one-half, J. W. Henning one-fourth, and Joshua

F. Speed one-fourth.   Kean died, leaving a last will, and by
virtue of this will and certain equitable proceedings under
it, his half of the hotel property now belongs to L. R. Kean
and his wife, J. Ella Kean, and Geo. M. Kean.   L. R. Kean
owns one-eighth, his wife, J. Ella Kean, one-eighth, and G.
M. Kean one-fourth of the entire property.

Joshua Speed died, leaving a will by which he disposed
of his one-fourth interest to his widow and to his brothers
and sisters.   To his widow he devised one-half of his inter-
est, and the other half to his ten brothers and sisters.   He
limited the interest in this property devised to three of his
sisters to an estate for life, and at their death their share to
go to their brothers and sisters having children.

Philip Speed, a brother of Joshua Speed, died, and by his
will devised his estate to his widow for life, and the remain-
der to his children, the issue of such as might be dead to
take the place of their parents.

L. R. Kean had mortgaged his one-fourth of the estate to
Tilford and others, and this action was originally instituted
to subject this interest to the mortgage debt.   His wife,
Ella Kean, owning one-eighth of the one-half of her hus-
band's interest by deed, was made a defendant.   She is ask-
ing a sale of the entire estate, alleging that it is indivisible,
or can not be divided without materially impairing its value
or the value of her interest, it being subject to the mortgage
made by her husband.   Henning, who owned a one-fourth
interest, filed an answer and cross-petition against all the
parties in interest asking a sale of the entire property as in-
divisible.

George M. Kean, the infant defendant, who owns one-
fourth of the property under the will of his father, is resist-
ing a sale of the interest owned by him—first, because it is

against his interest; second, the will of M. Kean expressly forbids the sale until he is twenty-eight years of age; and, lastly, maintains that there is no statutory authority for such a proceeding. The court rendering a judgment for the sale of the entire property, the infant defendant, by his guardian, has appealed.

The death of Joshua Speed leaves his interest to pass by his will in the following proportions: To his widow ten-eightieths; one-eightieth to each of seven brothers and sisters, and one-eightieth to each of three sisters for life, making three-eightieths, with remainder over.

The death of two of the original owners of this common estate, and the disposition made by them of their property by last will, has created such a multiplicity of interests in the hotel as renders it essential to the interest of all that a sale should be made of the entire property. It is evident that the property can not be divided without materially impairing its value, and equally as manifest that to dispose of such an estate or property by subjecting minute interests in it to sale at different times would result in great loss to those now entitled. It is not to be presumed that the present owners are in a condition to run the hotel in common or as partners, and if there is no mode of changing the nature of the title through the chancellor, by a sale of the entire property for the benefit of all, the shares must continue to increase in number and decrease in value until the distributive share of each would scarcely pay the owner for looking after it.

Kean, Henning, and Speed, holding as tenants in common this property that was indivisible, or that could not be divided without materially impairing its value, might have instituted an action, the one against the other, and required a sale of the entire property under the statute; and this being the

case, the one tenant, by making a disposition of his interest by deed or will to his children, or to a stranger, containing a clause prohibiting a sale, can not take from his co-tenants or joint owners the right to have the property sold if indivisible. Kean can not, by making a grant or devise of his interest, compel Henning and Speed to sacrifice their interests in order that the provisions of his will or grant may be carried out. Article 3 of chapter 67, General Statutes, and subsection 1 of section 492, Civil Code, have reference to sales of infants' real estate on the petition of the guardian or committee, and was not intended to be applied to sales of real estate held jointly when the property so held can not be divided without materially impairing its value, or the value of the plaintiff's interest therein.

Section 490 of the Civil Code provides that "a vested estate in real property, jointly owned by two or more persons, may be sold by order of a court of equity in an action brought by either of them, though the plaintiff or defendant be of unsound mind or an infant—first, if the share of each owner be less than one hundred dollars; second, if the estate be in possession, and the property can not be divided without materially impairing its value, or the value of the plaintiff's interest therein." A similar provision is found in the General Statutes, and the proceedings are not required to be regulated as in the cases of the sales of infants' real estate. When a sale is made under section 490 of the Code, no bond is required to be executed to the infant before judgment, but his interest shall remain a lien on the land in the manner pointed out by section 497, bearing interest until the infant becomes of age, or until the guardian of the infant execute bond as is required by section 493. This provision of the Code looked to the fact that the infant might be sued

by the joint owners, and as the latter would be entitled to a sale if the case was embraced by subsection 2 of section 490, the infant was made secure by retaining a lien on the land sold until his guardian executed a bond entitling him to receive the money.

In this case all the parties in interest are before the court and vested with the title.   In the case of Philip Speed's will, he provides that after the death of his wife, his property shall be divided between his children, the children of any who may be dead receiving the share of the parent.   This was a vested interest.   The same provision, in substance, is found in the will of Joshua Speed.   By codicil he devises an interest in his estate to three of his sisters for life—then to the children of his other brothers and sisters.   "The present capacity of taking effect in possession, if the possession were to become vacant, distinguishes a vested from a contingent remainder."   (Walter v. Crutcher, 15 B. M.)   All the parties in interest who are *sui juris* are seeking to have the entire property sold, and the testimony of those who are familiar with the hotel is to the effect that it is not susceptible of division.

It is insisted by counsel for the infant that a unity of interest must exist, and a joint right of possession, to authorize a sale of the entire property.   That all the unities of interest, title, time, and possession, creating a joint tenancy at the common law, must be found to exist in this case, or the chancellor is without power to adjudge a sale.   Such is, not the meaning of the Code.   A vested estate is all that is, necessary or required.   Joint tenants, tenants in common, and coparceners, are entitled to have a division of their real estate, and, whether called the one tenancy or the other, they have a vested estate; and with such an interest, when

the property is not susceptible of division, it may be sold by the decree of the chancellor. Such was the plain purpose of the statute. We are not able to perceive in what manner this case is affected by subsection 7 of section 494. That section provides that "all persons interested in the property must be made parties, and if objection to the sale be made by a defendant having a joint interest, his share shall not be sold; but the property may be divided, and 'a sale of the shares of those desiring it may be ordered, if such division and sale can be made without materially impairing the value of the property, or of the plaintiff's interest therein."

Under this provision of the Code it is insisted by counsel that an objection by any one of the joint owners will prevent the sale of his share, regardless of the rights of the other parties in interest. The objection can only prevail, as we construe this provision of the Code, when a division can be had without materially impairing the value of the property, or of the plaintiff's interest in it. The infant has failed to show by proof or otherwise in this case that such a division could have been made, but, on the contrary, it plainly appears that the property is indivisible, and that a sale is indispensable to the interests of all concerned.

If parties jointly interested in real property can make out a case under the statute requiring the interposition of the chancellor and a sale of the entirety, it seems to us it has been done in the case being considered, and to deny the relief would be to disregard the plain provisions of the statute.

It is argued that two judgments have been rendered in this case, and that the first judgment being final, the last judgment is a nullity. The mortgagers were seeking to sell the one-fourth interest owned by Kean and wife to the payment of their mortgage debt, and the chancellor granted

that relief, but did not dispose of the cross-petition seeking the sale of the entire property.    When called on to consider that branch of the case, he rendered a judgment selling the entire property.    This seems to have satisfied the mortgagees, and by its terms they will realize their money as soon as if judgment on the original petition had been enforced. That judgment did not dispose of the questions made by the cross-petition of the joint owners, and the one could not be pleaded in bar of the other.    The fact that the mortgagee had obtained his judgment, selling the one-fourth did not prevent the joint owners from having the entire property sold.

It is further suggested by counsel for the infant that the Code of Practice was not intended to confer new rights, but is an act entitled "An act to regulate practice in civil cases," that new remedies may be adopted by it, or the practice changed by its provisions, but no rights conferred other than relates to the remedy.    If this position is to be considered as sound, the General Statutes confer the jurisdiction in express terms, and the only embarrassing questions arising out of the mode of proceeding for the sale of the real estate of those laboring under a disability spring from the Code of Practice.

Section 6 of article 5, chapter 63, General Statutes, provides that "if lands are held by joint tenants, tenants in common, or coparceners, and the same is not susceptible of division, to be ascertained by the proof, or that a division would materially impair its value, &c., a sale may be had," &c.    So there is nothing in the constitutional question made conceding the position assumed by counsel to be the correct one.    The Code, whether so intended or not, confines the right of sale to cases where the estate is *vested* and in *possession*, and provides the remedy when such facts exist.    Its

provisions have been followed and recognized by this court and the profession as providing the remedy for the sale of joint estates where the realty can not be divided without impairing its value.  The possession of the lessee or the tenant is the possession of the owners, and with such a possession, coupled with the title, we see no reason why the chancellor has not full power to adjudge a sale when the proof, as in this case, brings it within the provision of the Code.  The guardian of the infant may, by application to the chancellor upon a proper state of the case, have the money of the ward reinvested in the hotel property; and, while it is not only the province but the duty of a court of equity to protect the rights of infants, we know of no rule of law or equity requiring this to be done by sacrificing the rights of all other parties who are interested in the same estate.

Judgment affirmed.